UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LAYLA CHRISTINA MIHUTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-01011-JRS-TAB |
| | ) | |
| MID AMERICA CLINICAL LABORATORIES, LLC, | ) ) | |
| | ) | |
| Defendant. | ) | |

# ORDER ON PLAINTIFF'S
# MOTION TO DISQUALIFY DEFENDANT'S COUNSEL

## I.     Introduction

This matter is before the Court on Plaintiff Layla Christina Mihuti's motion to disqualify Defendant Mid America Clinical Laboratories, LLC (MACL)'s counsel due to an alleged conflict of interest [Filing No. 14]. Mihuti unilaterally communicated with an attorney at Jackson Lewis—the law firm that represents MACL—after visiting Jackson Lewis's website and reading that attorney's biography page. She now argues her unsolicited email to that attorney made her a prospective client and created a conflict of interest "so great" that no attorney at Jackson Lewis could undertake representation of MACL in this matter. Disqualification of counsel is a drastic remedy, and unnecessary in this case. First, Mihuti's email did not create a prospective client-attorney relationship. Second, even if it did, Jackson Lewis acted reasonably once aware of the issue and screened off the attorney at issue to avoid further exposure to the allegedly significant information. Therefore, as more fully set forth below, Mihuti's motion [Filing No. 14] is denied.

## II. Background

This case began on March 13, 2019, when Mihuti filed a complaint against her former employer, MACL, alleging she was the subject of racially motivated and non-native origin hostile environment harassment by co-workers. [Filing No. 1, at ECF p. 2-3.] Mihuti claims that she repeatedly reported the harassment to her employer, but MACL failed to conduct a reasonable investigation or otherwise address her claims in a meaningful way, so she eventually resigned. [Filing No. 1, At ECF p. 2-3.]

Proceeding *pro se*, Mihuti contacted at least 30 attorneys and law firms seeking representation in this matter. [Filing No. 22, at ECF p. 7.] One attorney Mihuti contacted regarding representation was Michael W. Padgett, an attorney at Jackson Lewis. On March 5, 2019, Mihuti sent Padgett an email after visiting his biography page on Jackson Lewis's website. [Filing No. 14, at ECF p. 1-2.] Mihuti alleges that she provided Padgett with "significant information subject to attorney-client confidence." [Filing No. 14, at ECF p. 2.] Without sharing the specifics of her communication, Mihuti contends that she provided Padgett with significantly harmful information regarding the nature of her communications with MACL regarding the hostile working conditions she faced, as well as her expected strategy in forthcoming litigation. [Filing No. 22, at ECF p. 3.]

On April 17, 2019, two Jackson Lewis attorneys entered their appearances on behalf of MACL. [Filing Nos. 7 and 10.] Five months later[1], on September 4, 2019, Mihuti filed her motion to disqualify MACL's counsel, alleging the entire law firm of Jackson Lewis has a conflict of interest in this matter because of her unilateral communication with Padgett. [Filing

---

[1] MACL briefly argues in a footnote that Mihuti's motion should be denied as untimely [Filing No. 21, at ECF p. 3]. However, the Court need not address this argument since Mihuti's motion is denied for substantive reasons.

No. 14.] Mihuti reviewed MACL's proposed Case Management Plan and associated correspondence and concluded that "it is obvious that Jackson Lewis knowingly represents a client adverse to a prospective client in the matter for which the prospective client contacted the law firm and has used confidential and/or privileged information in the development of its defense strategy." [Filing No. 14, at ECF p.3.]

MACL's counsel contends that after receiving Mihuti's September 4 motion to disqualify, they immediately looked into Mihuti's allegations. [Filing No. 21, at ECF p. 4.] Padgett declared that he first learned about Mihuti's motion on September 6, 2019, and initially did not recognize her name or recall ever receiving any sort of communication from her. [Filing No. 21-1, at ECF p. 2.] However, on September 13, 2019, he was able to retrieve her email, and he alleges that it was only then that he recalled receiving it. [Filing No. 21-1, at ECF p. 2.] Padgett claims he immediately stopped reading Mihuti's email back in March once he realized she was seeking representation as a potential plaintiff in an employment dispute, because Jackson Lewis is a defense firm. [Filing No. 21-1, at ECF p. 3.] Padgett did not respond to Mihuti's email and alleges that he has not shared the email or its substance with anyone at any time. [Filing No. 21-1, at ECF p. 3.]

Nevertheless, on September 13, Jackson Lewis implemented an ethical screen. [Filing No. 21, at ECF p. 4.] Under the ethical screen, Padgett "is prohibited from having any involvement in, communication regarding, and/or access to any other information related to [Jackson Lewis]'s representation of MACL in this matter. Moreover, [he] will not be apportioned any part of the fee generated from [Jackson Lewis]'s work on this matter." [Filing No. 21, at ECF p. 4.] MACL's counsel, Brian L. McDermott, sent Mihuti a letter dated September 21, 2019, informing her that the ethical screen was imposed as an abundance of

3

caution after receiving her motion and as soon as the firm knew of the need for screening. [Filing No. 21-4, at ECF p. 2-3.]

### III. Discussion

Mihuti's motion for disqualification raises the ethical issues of conflict of interest and confidentiality relating to a prospective client. "[T]he district court possesses broad discretion in determining whether disqualification is required in a particular case[.]" *Whiting Corp. v. White Machinery Corp.*, 567 F.2d 713, 715 (7th Cir. 1977) (internal citation and quotation marks omitted). "Disqualification of counsel is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Childress v. Trans Union, LLC*, No. 1:12-cv-184, 2012 WL 6728339, at *4 (S.D. Ind. Dec. 28, 2012) (internal citation and quotation marks omitted). In *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017), the Seventh Circuit explained:

> [G]ranting a motion for disqualification has immediate, severe, and often irreparable consequences for the party and disqualified attorney. Disqualifying a lawyer immediately deprives the losing party from the representation of his choice and disrupts the litigation. In sum, disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary[.]

(Internal citations, quotation marks, and ellipses omitted). But the Seventh Circuit also warned:

> However, the duty of confidentiality represented in the Rules of Professional Conduct . . . is fundamental to the profession and the relationship between lawyer rand client. Courts have a duty to safeguard the privacy of the attorney-client relationship and in doing so to maintain public confidence in the legal profession and to protect the integrity of the judicial proceeding.

*Id.* (Internal citations and quotation marks omitted).

The Southern District of Indiana has adopted the Indiana Rules of Professional Conduct and the Seventh Circuit Standards of Professional Conduct as the standard of professional conduct in this Court. *See* S. D. Ind. L.R. 83-5(e). Thus, this case is governed by the Indiana

4

Rules of Professional Conduct[2]—specifically, Ind. R. Prof. Cond. 1.18, which describes the duties a lawyer owes to a prospective client.

> Ind. R. Prof. Cond. 1.18 states:
>
> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to the matter is a prospective client.
> (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).
> (d) When a lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:
>    (1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:
>    (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and
>       (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>       (ii) written notice is promptly given to the prospective client.

---

[2] Mihuti's motion to disqualify counsel cites to Rule 1.18 of the ABA's Model Rules of Professional Conduct. [Filing No. 14, at ECF p. 1.] But Indiana has not adopted the latest version of the ABA model rule—which was amended in 2012—or the comments pertaining to it. *Compare* ABA Mod. R. 1-18 (2019) *with* Ind. R. Prof. Cond. 1.18 (2019). Thus, the Court's analysis focuses only on the applicable version of the rule. Mihuti's claim, for instance, that "[t]here are no warnings or cautionary statements on Mr. Padgett's web page that advise employees searching for representation to refrain from contacting the law firm" [Filing No. 14, at ECF p. 2] is largely irrelevant under the Indiana Rules of Professional Conduct, which do not adopt this warning language. However, Mihuti raises new arguments and cites to Ind. R. Prof. Cond. 1.18 in her reply brief [Filing No. 22]. For these reasons, the Court grants MACL's motion for leave to file sur-reply [Filing No. 23].

### A. Mihuti's unilateral communication did not create an attorney-client relationship.

First, the Court turns to whether Mihuti had an attorney-client relationship with Padgett. Mihuti contends that she should be treated as a prospective client of a Jackson Lewis attorney, and thus, MACL's counsel violated Rule 1.18. [Filing No. 22, at ECF p. 1.] MACL counters that Mihuti was not a prospective client of Padgett or anyone at Jackson Lewis because her unilateral communication—in this case, one email—to Padgett does not constitute a "discussion" within the meaning of Ind. R. Prof. Cond. 1.18. [Filing No. 21, at ECF p. 8-9.] The phrasing of Rule 1.18 implies a "discussion," not just one-sided conversation. *See, e.g.*, ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 10-457 (2010) ("To 'discuss,' meaning to talk about, generally contemplates a two-way communication, which must begin with an initial communication."). Additionally, Comment 2 to Ind. R. Prof. Cond. 1.18 notes: "Not all persons who communicate information to a lawyer are entitled to protection under this Rule. A person who communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, is not a 'prospective client' within the meaning of paragraph (a)."

Mihuti acknowledges that she unilaterally communicated information to Padgett. [Filing No. 14, at ECF p. 2.] The question, therefore, is whether Mihuti had a reasonable expectation that Padgett was willing to discuss the possibility of forming a client-lawyer relationship at the time of that initial communication. Mihuti's argument centers on the idea that she had a reasonable expectation because Jackson Lewis's website invited potential clients to contact the attorneys directly. [Filing No. 14, at ECF p. 2; Filing No. 22, at ECF p. 1.] MACL, however, argues that under Indiana law, Mihuti had no reasonable expectation that Padgett was willing to discuss possibly forming a client-lawyer relationship with her. [Filing No. 21, at ECF p. 9.]

6

MACL cites to a 2010 formal opinion of the ABA's Standing Committee on Ethics and Professional Responsibility. *See* Formal Op. 10-457.[3] The ABA's opinion specifically addressed the issue of unilateral communication through a law firm's website. The ABA found: "Lawyers have a similar ability on their websites to control features and content so as to invite, encourage, limit, or discourage the flow of information to and from website visitors." *Id*. at 4. The ABA opined that while a particular website might "specifically encourage" a visitor to submit personal information and begin a discussion about representation, another website might "describe the work of the law firm and each of its lawyers, list only contact information such as a telephone number, e-mail or street address, or provide a website e-mail link to a lawyer. " *Id.* The ABA concluded that providing this sort of information on a website, alone, "does not create a reasonable expectation that the lawyer is willing to discuss a specific client-lawyer relationship." *Id.*

Here, Mihuti argues that Jackson Lewis's website specifically encouraged her to submit personal information. But Mihuti later contradicts her own argument. Mihuti's reply references the "Contact Us" page on the Jackson Lewis website to support her argument that the website invites potential clients to contact attorneys directly in hopes of forming a client-lawyer relationship. [Filing No. 22, at ECF p.1.] But in her response to MACL's motion for leave to file sur-reply, she indicates that she never visited that page and instead simply emailed Padgett after visiting his biography page on Jackson Lewis's website. [Filing No. 24, at ECF p. 2.] Either way, her arguments fail. On the "Contact Us" page, there is an obvious disclaimer, which is evident in the attachment Mihuti provided with her reply. [Filing No. 22-2, at ECF p. 5.] The

---

[3] This ABA formal opinion was written and released prior to the 2012 amendments to ABA Model Rule 1.18. Thus, in 2010, the language used in ABA Model Rule 1.18 was identical to the current language of Ind. R. Prof. Cond. 1.18.

disclaimer states: "Please note: Sending us an e-mail will not make you a client of the Firm. Do not send confidential or sensitive information using this form." [Filing No. 22-2, at ECF p. 5.] And if Mihuti only visited Padgett's biographical page on the website, it contains absolutely no invitation to contact beyond just providing his phone number and email address. This does not create a reasonable expectation that a lawyer is willing to discuss forming a client-lawyer relationship. *See* Formal Op. 10-457 at 4.

ABA Formal Opinion No. 10-457 further noted that a lawyer's response to a unilateral inquiry might indicate that the lawyer has agreed to discuss a possible client-lawyer relationship. *Id*. But again, in this case, Padgett never responded to Mihuti's communication. Thus, no attorney-prospective client relationship existed. Mihuti unilaterally contacted an attorney at Jackson Lewis regarding representation and has acknowledged that she never received any sort of response from Padgett or anyone at the firm. [Filing No. 22, at ECF p. 8.] Her single, unilateral communication was not enough to create an attorney-prospective client relationship in this matter. The Court—and the ABA's opinion—can fathom a scenario where a lawyer's website may invite communication in such a way that it creates a reasonable expectation that a lawyer is willing to discuss the possibility of forming a client-lawyer relationship. However, this is not such a scenario. Mihuti's initial communication with Padgett was not enough to be considered a "discussion" under Ind. R. Prof. Cond. 1.18. Therefore, she was not a prospective client within the meaning of paragraph (a), and she is not entitled to protection under this rule.

### B. The information Mihuti allegedly shared with Padgett is not "significantly harmful" to her position in this case.

In her reply, Mihuti alleges, without providing any specifics, that she provided Padgett with significantly harmful information. Mihuti contends that the information she provided "deals with the nature of communications between [Mihuti] and her former employer, MACL, regarding the hostile conditions to which she was subjected, and her expected strategy in the upcoming litigation." [Filing No. 22, at ECF p. 3.] Mihuti describes this as "a critical element" of her case because the communications in question demonstrate that MACL was made aware of the allegedly hostile workplace conditions and failed to appropriately act on Mihuti's allegations of workplace harassment. [Filing No. 22, at ECF p. 3.]

MACL points out, however, that this information was already described in Mihuti's complaint. [Filing No. 23-1., at ECF p. 7.] Mihuti alleged in her complaint that she was the subject of racially motivated and non-native origin hostile environment harassment by co-workers. [Filing No. 1, at ECF p. 2, 3.] Mihuti claimed that she repeatedly reported the harassment to her employer, but MACL failed to reasonably investigate or address her claims in a meaningful way. [Filing No. 1, at ECF p. 2, 3.] In addition, MACL argues that communications that allegedly occurred between Mihuti and her former employer during the course of her employment are either already in MACL's in possession or would be shared with MACL's counsel during the course of this litigation. [Filing No. 23-1, at ECF p. 7.]

Mihuti has not provided the Court with the actual email she sent Padgett because she alleges she cannot do so without revealing the nature of the information itself or waiving any remaining privilege. [Filing No. 22, at ECF p. 2.] Yet Plaintiff had the opportunity to at least describe content to the Court in more detail without disclosing the information itself. She has not done so. Instead, Mihuti asks the Court for permission to provide copies of her email to

9

Padgett for *in camera* review. [Filing No. 22, at ECF p. 3.] Such *ex parte* review is generally disfavored unless necessary. *See, e.g., Ayestas v. Davis*, __ U.S. __, __, 138 S. Ct. 1080, 1091, 200 L. Ed. 2d 376 (2018) ("In our adversary system, *ex parte* motions are disfavored, but they have their place."). As noted above, the allegedly significantly harmful information Mihuti shared with Padgett was either in Mihuti's complaint or will likely be subject to disclosure through discovery. Moreover, as discussed below, Jackson Lewis promptly implemented an ethical screen of Padgett once the firm became aware of Mihuti's allegations. Thus, *in camera* review of the contents of Mihuti's email would only serve to unnecessarily delay resolution of this matter.

Mihuti contends that MACL's proposed Case Management Plan—specifically, paragraph K—demonstrates that MACL "has been made aware of the electronic communications and likely taken steps to purge them from their prior storage location(s)." [Filing No. 22, at ECF p. 3.] MACL's counsel proposed the CMP, emailed it to Mihuti, and invited her to make any necessary changes. [Filing No. 21, at ECF p. 3.] Paragraph K of the CMP describes MACL's proposal for the parties' exchange of electronically stored information (ESI). [Filing No. 21-3, at ECF 5-6.] It contains common language that many CMPs use to describe discovery of ESI. Accordingly, Mihuti has not suggested Padgett received anything specific that would rise to the level of significantly harmful information not otherwise subject to disclosure in this matter.[4]

---

[4] Mihuti also alleges that MACL is intentionally destroying evidence. MACL's counsel strongly denies this accusation and notes that it "will continue to preserve evidence in this matter in accordance with all applicable laws." [Filing No. 23-1, at ECF p. 8.] The Court has no reason to believe otherwise.

### C. Even assuming, *arguendo*, that Mihuti shared significantly harmful information with Padgett, MACL timely screened Padgett from any further involvement.

Finally, even if Mihuti provided Padgett with significantly harmful information, MACL timely screened Padgett from any further involvement in this matter. Padgett's declaration states that he stopped reading Mihuti's March 5 email as soon as he realized she was contacting him about potential employment claims, and he did not share the email or disclose its substance with any other Jackson Lewis attorney at any time. [[Filing No. 21-1, at ECF p. 3](#).] MACL's counsel immediately investigated Mihuti's allegations after receiving her motion to disqualify counsel early September 2019. [[Filing No. 21-1, at ECF p. 3](#).] Padgett learned about Mihuti's motion on September 6, 2019, and initially did not recognize her name or recall receiving any communication from her. [[Filing No. 21-1, at ECF p. 2](#).] However, on September 13, 2019, he was able to retrieve her email. [[Filing No. 21-1, at ECF p. 2](#).] That same day, September 13, Jackson Lewis shielded Padgett from any involvement in this matter and prevented him from receiving any part of the fee generated by it. [[Filing No. 21-1, at ECF p. 3](#).] MACL's counsel used reasonable measures under the circumstances to prevent firm exposure to the information Mihuti unilaterally sent to Padgett. And counsel promptly notified Mihuti of the steps taken. [[Filing No. 21-4, at ECF p. 2](#).] Thus, these facts do not rise to the level of necessitating disqualification. MACL may continue to be represented by Jackson Lewis and its attorneys other than Padgett.

## IV.   Conclusion

Disqualification of counsel is a drastic measure, and unwarranted here.  Mihuti sent unsolicited, allegedly sensitive information to an attorney with no reasonable expectation that said attorney was willing to discuss representation.  Once MACL's counsel was aware of the situation, they acted swiftly and appropriately to remedy it.  Therefore, Mihuti's motion to disqualify MACL's counsel [Filing No. 14] is denied.[5]

Date: 12/2/2019

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

LAYLA CHRISTINA MIHUTI
10801 Pineview Ct.
Louisville, KY 40299

---

[5] As previously noted, MACL's motion for leave to file sur-reply [Filing No. 23] is granted and Mihuti's request for *in camera* review of her communication with Padgett is denied as moot [Filing No. 24, at ECF p. 1.]